

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 30, 2022

**By ECF**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Miguel Compres*, 21 Cr. 352 (PAE)

Dear Judge Engelmayer:

      The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is currently scheduled for April 7, 2022. For the reasons set forth below, the Government submits that a substantial term of imprisonment—no less than the term of six months' imprisonment recommended by the Probation Department—would adequately reflect the gravity of the defendant's offense and otherwise serve the ends of sentencing.

      **A. Offense Conduct**

      The charges in this case arose out of an investigation conducted by the Federal Bureau of Investigation ("FBI") and the New York City Department of Investigation ("DOI"). The three-count Indictment ("Indictment") charged that from at least November 2019 through August 2020, the defendant conspired to commit bribery and honest services wire fraud, in violation of Title 18, United States Code, Section 371 ("Count One"); bribery, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2 ("Count Two"); and honest services wire fraud, in violation of Title 18, United States Code, Sections 1343, 1346, and 2 ("Count Three"). (*See* Final Presentence Investigation Report dated January 24, 2022 (the "PSR"), filed by the U.S. Probation Office ("Probation") ¶¶ 1–4.)

      The Manhattan Detention Complex ("MDC") is a jail in lower Manhattan operated by the New York City Department of Correction ("NYCDOC"). The defendant, while employed as a correction officer at the MDC, accepted cash payments totaling at least $7,075 in exchange for smuggling various contraband to three inmates ("Inmate-1," "Inmate-2," and "Inmate-3").[1] (PSR ¶ 11-14). Specifically, Compres smuggled scalpels, cigarettes, and cellphones to those inmates,

---

[1] Compres estimated that he received approximately $10,000 for smuggling contraband. (PSR ¶ 14).

Hon. Paul A. Engelmayer  Page 2
March 31, 2022

as well as marijuana possibly laced with K2.[2] (PSR ¶ 11-13).  NYCDOC rules and regulations expressly prohibit such conduct, including by providing that "employees shall not enter into any transaction with an inmate, nor carry, convey, or make accessible to an inmate within a facility/command any intoxicant, opiate, narcotic, or other contraband article, nor traffic with an inmate in any manner."  (NYCDOC Rules and Regulations 3.25.010).

The defendant's scheme was far-reaching, involving several inmates, as well as non-incarcerated associates of those inmates, with whom Compres spoke directly by phone and met in-person to retrieve contraband. (Indictment ¶ 5, 11, 12).  Compres' conduct was also recurrent: he smuggled in contraband for inmates on several occasions during the charged period.  For Inmate-2, Compres admitted to smuggling contraband on five or six occasions over approximately six months in 2020.  And for Inmate-3, Compres admitted to introducing cellphones on two or three occasions, and ten scalpels on another.

Evidence obtained from various searches of the MDC corroborates Compres' admissions: A search of Inmate-2's cell on February 18, 2020, yielded among other things, five scalpel blades and marijuana:



---

[2] When he was interviewed by FBI and DOI agents on January 21, 2021, Compres stated that he did not know whether the marijuana he smuggled into the MDC was laced with K2.  During that interview, Compres also admitted to smuggling cigarettes for three additional inmates.

(*Id.* ¶ 12). When staff searched that same inmate's housing area about five months later, they found, among other things, marijuana, a 2.5-inch scalpel blade, and drill bits:



A search of Inmate-3's housing area on July 29, 2020, revealed, among other things, a cellphone, six one-inch ceramic razors, a small wrench, and a small drill. (PSR ¶ 11). Finally, a search of Inmate-1's cell on February 18, 2020, also yielded a cellphone. Earlier that month, Inmate-1 and an associate had discussed obtaining a cellphone from Compres. (*Id.* ¶ 13).

The defendant was arrested on May 26, 2021. (PSR ¶ 15). On November 3, 2021, he pled guilty to Counts One and Two of the Indictment pursuant to a plea agreement (the "Plea Agreement") that, among other things, stipulates that the defendant agrees to forfeit $7,075 and to make restitution in the amount of $12,449.40 to the NYCDOC. (*Id.* ¶¶ 6-7).

### B. Applicable Guidelines Range

Pursuant to the Plea Agreement, the parties agree that the Guidelines calculation applicable to the defendant results in a combined Adjusted Offense Level of 15, and that the defendant is in Criminal History Category I. (*See* PSR ¶ 7). As such, the agreed Guidelines range is 18 to 24 months' imprisonment (the "Stipulated Guidelines Range"). Probation agrees with that calculation. (*Id.* ¶ 73). Ultimately, Probation recommends a variance to a sentence of 6 months. (*Id.* at 20).

### C. Discussion

#### 1. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they

are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

   2. **A Sentence of At Least Six Months is Appropriate**

The Government submits that a substantial term of imprisonment—no less than the term of six months' imprisonment recommended by the Probation Department—appropriately reflects the serious nature of the defendant's conduct, promotes respect for the law, and affords adequate deterrence to similar illegal activity.

*First*, a substantial term of imprisonment would appropriately reflect the gravity of the defendant's offense and promote respect for the law. As a correction officer, the defendant was duty-bound to protect the inmates and employees at the MDC, including by preventing access to contraband. Instead, the defendant disregarded that duty. But Compres did not simply turn a blind eye to contraband in the jail. He conspired with Inmate-1, Inmate-2, and Inmate-3 to *introduce* prohibited items into the MDC.

Worse, the defendant provided inmates with lethal weapons. It should be readily apparent that scalpel blades pose grave and immediate threats to the lives of the inmates, officers, and staff at the MDC. They contribute to the endemic violence in NYCDOC facilities and, more broadly, undermine daily order in jail by flouting NYCDOC regulations and the correction officers bound to enforce them. By repeatedly providing inmates with dangerous contraband, the defendant willfully disregarded the law, his duty as a correction officer, and the safety of others in exchange

for several thousand dollars. A substantial term of imprisonment would reflect the seriousness of that conduct, and promote respect for the law.

*Second*, a substantial term of imprisonment is necessary to afford adequate deterrence. As detailed above, the defendant's involvement in this smuggling scheme was not confined to a single incident or inmate. Rather, over the course of several months, Compres routinely introduced contraband into the MDC for several inmates. Compres insists that he acted out of fear, citing the dangerous conditions at the MDC and the culture of corruption there. (Def. Sent'g Submission 16-20). Introducing scalpels and other dangerous contraband would only have exacerbated those conditions. Furthermore, the documented danger at the MDC meant that scalpels and other dangerous contraband would not have posed an abstract threat. Instead, they were the weapons that inmates used regularly to injure other inmates and staff. Even assuming Compres genuinely feared for his and others' safety, the solution would have been to leave his job as a correction officer. With a college degree and steady employment history, Compres should have had little trouble job securing a job elsewhere. Indeed, the defendant acknowledges that he should have resigned from the NYCDOC, left New York City to be closer to his father, and obtained a "good job." (Def. Sent'g Submission, Ex. K).

No excuse for the defendant's conduct, the culture of corruption at the MDC also highlights the need for general deterrence in this case. Compres was not the first correction officer to violate his duty and conspire with inmates, and he will not be the last. In fact, on the day Compres was charged, eight other NYCDOC employees were charged in separate indictments for participating in various contraband smuggling schemes. *See United States v. Assanah*, 21 Cr. 351 (CM); *United States v. Balducci*, 21 Cr. 355 (RMB); *United States v. Diaz*, 21 Cr. 350 (NRB); *United States v. Garrett*, 21 Cr. 354 (VEC); *United States v. Harrell*, 21 Cr. 353 (RA); *United States v. Lewis*, 21 Cr. 349 (JSR); *United States v. Pelzer*, 21 Cr. 348 (JMF); *United States v. Reed*, 21 Cr. 347 (RA).

Three of those defendants have been sentenced, and the Government acknowledges that none has received a term of incarceration. *See Diaz*, Dkt. 29; *Garrett*, Dkt. 43; *Lewis,* Dkt. 31. Still, an incarceratory sentence would be appropriate in this instance to reflect Compres' comparatively more egregious conduct. None of the sentenced defendants introduced deadly weapons into their respective NYCDOC facilities; rather, they introduced drugs and, in some instances, cellphones and cigarettes. The Government does not mean to minimize that conduct—drugs create an obvious safety hazard for inmates, and contraband of any sort undermines prison regulations. But scalpels and other inherently dangerous weapons are, simply put, different in kind. Recognizing as much, Judge Failla sentenced three correction officers to six months' imprisonment for introducing various contraband, including in the case of one officer, a knife, into a private detention facility in Queens. *See United States v. Williams, et al.*, 17-cr-632 (KPF); Dkt. 61 (Govt. Sent'g Submission as to Shawn Pettigrew at 2). The prospect of an incarceratory sentence may well deter other correction officers from, at the very least, introducing scalpels and other inherently dangerous articles into prisons.

In connection with the defendant's sentencing, the Government also notes that, following his arrest, the defendant voluntarily met with the Government and provided information concerning his involvement in smuggling activity. (Def. Sent'g Submission 3). While such information did not lead to the prosecution of others and does not constitute substantial assistance

to an investigation, the Government notes the defendant's voluntary efforts to assist law enforcement so that the Court may consider those efforts in fashioning an appropriate sentence.

### D. Conclusion

For the reasons set forth above, the Government respectfully submits that an incarceratory sentence of at least six months would adequately balance the relevant considerations under Section 3553(a), and achieve the statute's stated objectives in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
Marguerite B. Colson
Assistant United States Attorney
Tel.: (212) 637-2587

cc: Michael Vitaliano, Esq. (via ECF)